Sedgwick, Ch. J.—[Concurring.]
—I agree that the judgment should be affirmed.
The request of defendants’ counsel which the court refused to charge, viz., that if the plaintiff entered the store through an entrance apparently not designed for the use of customers of the store, but obviously intended for the shipment and transfer of freight in the carrying on of defendants’ business, the plaintiff assumed the risk of so doing and cannot recover, were not absolutely correct, under the circumstances of the case as the jury were at liberty to find them. For, if plaintiff and other customers of the store, had been in the habit of using the door referred to, for exit and entrance, with the permission of the owner, then the mere appearance of the door, being for the shipping of freight and not for customers, would not be tantamount to a direction of the owner to the plaintiff not to enter. The actual, although implied, permission to usé, as a customer, would be a modification of such á supposed direction, and would entitle the plaintiff, if she entered, to protection against negligence. The testimony of the *184 plaintiff that she and other customers of the store had before gone in at the door, presented a question for the jury; as to whether such use had not been with the permission of the owner.
The court also refused to charge as requested for defendant, “that if the jury believe that plaintiff was directed by an employee of the defendants not to enter the door, and through heedlessness or inattention, she did not hear what was said to her, or hearing it, disregarded the warning, the defendants are not liable.” The testimony shows that the direction or warning referred to was given, if at all, as follows: Hamlin, a servant of defendants, was about to go in the door, when he was told of and then saw, the danger from the cask that was jammed in the .hatchway. He stepped out and shut the door. He saw the plaintiff approaching the door. He said : “ Look out, get back, don’t go in there,” and “ I pushed her this way slightly and she jumped right away from me, acted wild and scared; and she went in spite of me, and the next moment I looked around and saw the cask on the floor and the lady on the floor. I used a pretty loud tone of voice. I was excited a little, thinking that I might have got hurt.”
I do not think that as matter of law heedlessness, taking the meaning of that word as it could only be applied to the facts of the case, or inattention or disregard, would show negligence on the part of the plaintiff. Why, as matter of law, should ordinary prudence call upon her, to obey a direction or warning, as such, of a person, not known by her to be an employee, or who at least, in the course of due care on her part, would have appeared to be an employee ? As matter of law, it is not a want of due care, to heed or attend to or disregard, the direction or warning of an excited man in the street, whose appearance and situation do not necessarily imply that he was an employee. The request implies that it was enough if Hamlin were an employee, without the plaintiff knowing or having reason to believe that he was. Again, if the plaintiff knew that Hamlin was an employee and did hear what he said, it was not *185 absolutely her obligation to believe that it was dangerous for her to enter. The tones in which he spake, his own excitement, his pushing her slightly, affected her mind, as she heard and was giving attention to what he meant by his words. Taken altogether, it was a question for the jury of whether, if she had given ordinary care in hearing or heeding him, she would have known that he meant to tell her it was dangerous to enter the door. If circumstances that she did not control affected her mind, so that she did. not understand what persons ordinarily would understand, the jury might consider the fact as to the main question of whether she used due care.